IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BOSE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No._____ |
| | ) | |
| BEATS ELECTRONICS, LLC and, | ) | |
| BEATS ELECTRONICS INTERNATIONAL | ) | JURY TRIAL DEMANDED |
| LIMITED, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Bose Corporation ("Bose") brings this complaint for patent infringement against defendants Beats Electronics, LLC and Beats Electronics International Limited (collectively, "Defendants" or "Beats").

### NATURE OF THE ACTION

1.     Bose brings this action against Beats to protect its valuable patented technology for noise cancelling headphones.  In addition to this complaint, Bose has filed a complaint in the U.S. International Trade Commission against Beats, and others, asserting infringement of the same patents.  The ITC complaint is attached as Exhibit 1.

### INTRODUCTION

2.     Since Bose was founded in 1964, Bose has designed and developed unique sound solutions for a host of audio applications, including home entertainment and home audio, aviation and automotive industries, and the military.  Bose also designs professional sound systems for

many applications, including stadiums, auditoriums, houses of worship, retail businesses, department stores, and restaurants.

3.      Bose develops, manufactures, and supports a wide range of products including automotive sound systems, professional audio systems, and personal audio equipment, such as headphones, tabletop systems, speaker systems, and home theater systems.  Bose's product offerings extend beyond audio products and now include products such as the Bose® Ride® active seat for the commercial trucking industry.  Additional Information about Bose is available on its website:  http://www.bose.com.

4.      Among the high-quality audio products designed, developed, and sold by Bose are noise cancelling headphones that actively cancel out background noise to deliver excellent audio renditions of music and other recordings.  As used herein, "headphones" may also be referred to as, for example, "earpieces," "earphones," "headsets," "earbuds," or "sport headphones."

5.      For almost 50 years, Bose has made significant investment in the research, development, engineering, and design of proprietary technologies now implemented in its products, such as noise cancelling headphones.  Bose's current line of noise cancelling headphones, for example, embodies inventions protected by at least 36 U.S. patents and applications (22 patents and 14 pending applications).

**PARTIES**

6.      Plaintiff Bose is a corporation organized and existing under the laws of the State of Delaware and having a principal place of business at The Mountain, Framingham, Massachusetts.

7.      Upon information and belief, defendant Beats Electronics, LLC ("BEL") is a limited liability company organized and existing under the laws of the State of Delaware with its

principal place of business at 8600 Hayden Place, Culver City, CA 90232, and doing business in Delaware.[1]

8.      Upon information and belief, Beats Electronics International Limited ("BEI") is a corporation organized and existing under the laws of Ireland with its registered office at The Malt House South, Grand Canal Quay, Dublin 2, Ireland.  According to documents filed with Ireland's Companies Registration Office ("CRO") on June 20, 2014, BEI has recently converted from a limited corporation into an unlimited corporation (*i.e.*, a corporation with unlimited member liability but no obligation to file annual finances with the CRO).  These filings show that BEI is wholly owned by its members Beats Holding Three LLC and Beats Holding One GP, both of which are Delaware entities that list their respective addresses as 800 N. State Street Suite 402, Dover, Delaware 19901.  Upon information and belief, BEI is ultimately a subsidiary of BEL, a Delaware limited liability company.  BEL and BEI are collectively called "Beats" in this Complaint.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35, §§ 271, *et seq.* of the United States Code.

10.     This Court has personal jurisdiction over Defendants.  BEL is subject to personal jurisdiction as a resident of Delaware.  Moreover, the Defendants have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.  Upon information and belief, the Defendants

---

[1] Beats appears to have recently re-located its principal place of business from 1601 Cloverfield Blvd., Suite 5000N Santa Monica, CA 90404, to the Culver City address.

derive substantial revenue from the sale and use of products, including the products accused of patent infringement herein (such as the Beats Studio® and Studio® Wireless headphones), which are placed into the stream of commerce for sale within this district through Delaware retailers and through direct postal delivery from Beats' websites.  Beats expects or is in a position to reasonably expect its actions to have consequences within this district.  Beats continuously does business, solicits business, engages in other persistent acts of conduct, and derives substantial revenue from goods and services provided to individuals in this district.  This Court also has personal jurisdiction over BEL because this entity regularly transacts business in this judicial district, has committed and continues to commit acts of patent infringement in this district, and has availed itself of Delaware's corporate laws.  Furthermore, Defendants operate websites for the purpose of promoting products alleged to infringe Bose's patent rights as detailed herein.  Websites owned and maintained by each of the respective Defendants can be accessed by users, customers, potential customers, and others located in this district.[2]  Exhibits 7 and 8 are true and accurate copies of Beats webpages marketing the Beats Studio® and Beats Studio® Wireless, respectively.

11.     Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391 and/or 1400(b).  Beats is subject to personal jurisdiction in this district and Beats' infringing acts cause injury to Bose within this district.

**BOSE NOISE CANCELLING® TECHNOLOGY**

12.     During a 1978 flight to Boston returning from Zurich, Dr. Bose was trying out a new set of airline-supplied headphones and found that the experience was a great disappointment to him, as the fidelity benefits of the new headphones, compared to the older pneumatic tube

---

[2] BEL website available at http://www.beatsbydre.com/.
  BEI websites available at, *e.g.*, http://uk.beatsbydre.com/ and http://ca.beatsbydre.com/.

phones, were masked by significant audible cabin noise and by the distortion that resulted from increasing the headphone volume to overcome this noise.  On that flight, Dr. Bose formulated the basic concept and technology for a headphone that would not only reproduce speech and music with high fidelity, but also simultaneously act to significantly reduce unwanted cabin noise.

13.     Upon his return, Dr. Bose initiated a research program to work on this problem. Early research centered on building models to validate the concept and to allow study of the materials and transducers needed to make the system work.  As knowledge increased, Bose engineers began to consider applications for the technology.

14.     This technology is known as active noise reduction ("ANR"), also known as active noise control.  ANR is a technique to reduce unwanted noise by introducing a second sound source that destructively interferes with the unwanted noise.  ANR headphones typically use at least one microphone to detect unwanted ambient noise, and the headphone speaker produces sound waves of reverse phase to destructively interfere with the unwanted sound.

15.     Over the next several years, a series of prototypes were built for the U.S. Air Force, the U.S. Army and, in 1986, for the experimental Voyager aircraft, in a privately sponsored, non-stop around-the-world flight.  In 1989, Bose Corporation introduced the first commercially available active noise reduction headset.  This product was designed for the aviation industry for communication in light aircraft and helicopters.

16.     In 1991, the U.S. Air Force selected Bose Corporation to produce an Acoustic Noise Cancelling headset for flight helmets and, in 1993, the Combat Vehicle Crewman (CVC) headset went into production for the U.S. Army.  The contract for the Performance Improved Combat Vehicle Crewman (PICVC) headset was renewed and these headsets are used by the U.S. Army on Abrams Tanks and Bradley Fighting Vehicles.  U.S. Air Force pilots flying the C-130

and other aircraft also have been outfitted with Bose active noise reduction headsets.  Product improvements were introduced in 1995 with the Acoustic Noise Cancelling® headset Series II, which was awarded "Product of the Year" by the Aircraft Owners and Pilots Association (AOPA).  In 1998, the Bose Aviation Headset X$^{TM}$ was introduced, offering a breakthrough in performance with Bose's proprietary TriPort® headphone structure.  In 2004, Bose Corporation introduced the TriPort® Tactical Headset, which was employed by infantry soldiers operating military Humvees, cargo trucks, and other wheeled vehicles.  In 2013, Bose Corporation introduced the T5 Tactical Headset, which allows dismounted soldiers to continue to have the benefits of Bose's technology while away from their vehicle, among other advances.

17.     Bose Corporation has leveraged its research in military and commercial noise reduction for consumer applications.  The QuietComfort® Acoustic Noise Cancelling headphones were first introduced in 2000.  In 2003, Bose Corporation debuted the QuietComfort® 2 headphone to critical acclaim, offering an unprecedented combination of noise reduction, audio performance, and comfortable fit in a more convenient around-the-ear headphone.  In 2006, the product line was extended with the introduction of the QuietComfort® 3 headphones offering the same level of performance as its predecessor in a smaller, more portable on-ear design.  In 2009, Bose introduced the QuietComfort® 15 headphones, which were widely considered to provide superior noise cancellation compared to any other consumer on-ear headphones currently available.  In 2013, Bose introduced the QuietComfort® 20 and 20i headphones ("QC20"), which marked both the first in-ear Acoustic Noise Cancelling® headphone from Bose and the first mass-market use of digital technology in a Bose Acoustic Noise Cancelling® headphone.

18.     The inventions covered by the Asserted Patents arose out of the inventors'

recognition of the unique technical problems associated with constructing improved

high-performance noise cancellation headphones.

19.     To protect its investments, Bose has sought patent protection, and owns many

patents and patent applications.  Because Bose invests heavily in research and development, and

because Bose has built its reputation on producing superior products through innovative

technology, Bose's continued success depends in substantial part on its ability to establish,

maintain, and protect its proprietary technology through enforcement of its patent rights.

### THE PATENTS-IN-SUIT

20.     Bose's noise cancelling headphones are protected by numerous patents.  Bose's

latest noise cancelling headphones model, the QC20, is protected by at least 27 U.S. patents and

applications (14 patents and 13 pending applications).  Among the patents covering Bose's QC20

headphones are U.S. Patent Nos. 6,717,537; 8,073,150; 8,073,151; 8,054,992; and 8,345,888

(respectively, the "'537 patent," "'150 patent," "'151 patent," "'992 patent," and "'888 patent," or

collectively the "Asserted Patents").

21.     On April 6, 2004, the United States Patent and Trademark Office ("PTO")  duly

and legally issued United States Patent No. 6,717,537 ("the '537 patent"), entitled  "Method and

Apparatus for Minimizing Latency in Digital Signal Processing Systems" to Xiaoling Fang, Keith

L. Davis, and Martin R. Johnson.  Bose is the owner by assignment of the '537 patent.  A true and

accurate copy of the '537 patent is attached as Exhibit 2.

22.     On December 6, 2011, the United States Patent and Trademark Office ("PTO")

duly and legally issued United States Patent No. 8,073,150 ("the '150 patent"), entitled

"Dynamically Configurable ANR Signal Processing Topology" to Marcel Joho and Ricardo

Carreras.  Bose is the owner by assignment of the '150 patent.  A true and accurate copy of the '150 patent is attached as Exhibit 3.

23.     On December 6, 2011, the PTO duly and legally issued United States Patent No. 8,073,151 ("the '151 patent"), entitled "Dynamically Configurable ANR Filter Block Technology" to Marcel Joho and Ricardo Carreras.  Bose is the owner by assignment of the '151 patent.  A true and accurate copy of the '151 patent is attached as Exhibit 4.

24.     On November 8, 2011, the PTO duly and legally issued United States Patent No. 8,054,992 ("the '992 patent"), entitled "High Frequency Compensating" to Roman Sapiejewski.  Bose is the owner by assignment of the '992 patent.  A true and accurate copy of the '992 patent is attached as Exhibit 5.

25.     On January 1, 2013, the PTO duly and legally issued United States Patent No. 8,345,888 ("the '888 patent"), entitled "Digital High Frequency Phase Compensation" to Ricardo Carreras, Daniel Gauger, Jr., and Steven Isabelle.  Bose is the owner by assignment of the '888 patent.  A true and accurate copy of the '888 patent is attached as Exhibit 6.

26.     The QC20 embodies at least one invention claimed by each of the Asserted Patents.

27.     Bose has placed the required statutory notice on all its products manufactured and/or sold under the Asserted Patents.  For example, Bose marks the package of its QC20 headphones with a URL directing users to a web page listing all of the Asserted Patents, among others.

## THE ACCUSED PRODUCTS

28.     Beats markets and sells active noise reduction headphones under its "Studio®" and "Studio® Wireless" brands, among others (collectively "the Accused Products").  Beats states that

the Accused Products use "Adaptive Noise Cancellation," which Beats markets as a form of noise cancellation.

29.     Beats sells the Accused Products directly to individuals within this judicial district through its website (http://www.beatsbydre.com/).  Beats also sells the Accused Products via numerous authorized dealers with locations throughout this judicial district, including Best Buy, Target, Staples, Radio Shack, and many others.

30.     Upon information and belief, both Defendants import the Accused Products from China, where they are manufactured.

<u>**CAUSES OF ACTION**</u>

**Count I – Infringement of U.S. Patent No. 6,717,537**

31.     Bose re-alleges and incorporates herein by reference the allegations in paragraphs 1-30 of this Complaint.

32.     In violation of 35 U.S.C. § 271, Beats has directly infringed and continues to directly infringe one or more claims of the '537 patent by making, using, offering for sale, and/or selling the Accused Products in the United States and/or importing the Accused Products into the United States.  The method claims of the '537 patent are directly infringed at least by operation of the Accused Products, and may also be infringed through manufacture and/or testing.

33.     Beats has had actual notice of the '537 patent since at least when Bose notified Beats of the '537 patent.  Further, Beats has actual notice of the '537 patent and its infringing acts at least as a result of Bose's filing of a complaint in the U.S. International Trade Commission ("ITC") and filing of this Complaint.

34.     In violation of 35 U.S.C. § 271, Beats has induced infringement of the '537 patent in this district and elsewhere in the United States by instructing users to use the Accused Products

in a manner that infringes one or more claims of the '537 patent.  For example, the Beats Studio®

User Guide and Beats Studio® Wireless User Guide demonstrate operation of the Beats Studio®

headphones, which infringe the '537 patent when operated as instructed.  A true and accurate copy

of the Beats Studio® Quick Start User Guide as available on both Defendants' websites is attached

as Exhibit 9 and a true and accurate copy of the Beats Studio® Wireless Quick Start User Guide as

available on both Defendants' websites is attached as Exhibit 10.

35.     The Accused Products are designed to use the infringing noise cancelling

functionality when operated by an end user.  Beats has designed the infringing noise cancelling

functionality to be used automatically when a user is listening to music, and Beats instructs users

on how to implement noise cancelling functionality when a user only desires noise reduction.

When used to listen to music, the Beats Studio® and Studio® Wireless use the products' noise

cancellation to "*automatically* strike[] the perfect blend between your music and the world

outside."  Exhibits 7-8 (emphasis added).  The Accused Products can also be used for noise

cancellation when no music is played, a feature that Beats also advertises.  *See id.*  Thus, Beats

specifically encourages users to use the infringing functionality.  Beats advertises no method to

turn off features that cause end users to directly infringe.

36.     In violation of 35 U.S.C. § 271, Beats has contributorily infringed the '537 patent in

this district and elsewhere in the United States by making, using, selling, distributing, and/or

offering for sale the Accused Products in the United States, and/or importing the Accused Products

into the United States, for use in practicing the inventions set forth in the '537 patent that Beats

knows to be specially made or adapted for use in infringing the invention(s) claimed by the '537

patent.  The Accused Products have no substantial non-infringing use.

37.     Upon information and belief, Beats knows or is willfully blind to the fact that the Accused Products are especially made or especially adapted for a use that infringes, and the Accused Products are not a staple article or commodity of commerce suitable for a substantial non-infringing use.

38.     Upon information and belief, Beats will continue to infringe the '537 patent unless enjoined by this Court.

39.     Beats does not have a license or permission to use the '537 patented technology.

40.     As a result of Beats' infringement of the '537 patent, Bose is being irreparably injured, and Bose will suffer additional irreparable injury unless and until Beats is enjoined by this Court.

41.     As a result of Beats' infringement of the '537 patent, Bose has suffered and will continue to suffer damages, in an amount yet to be determined, including due to loss of sales, profits, and potential sales that Bose would have made but for Beats' infringing acts.

42.     Upon information and belief, Beats' infringement of the '537 patent is and has been willful.  Upon information and belief, despite knowledge of the '537 patent, an objectively high likelihood that its actions constituted infringement of the '537 patent, and that Beats knew or should have known of that objective likelihood, Beats has infringed and continues to infringe the '537 patent with reckless disregard for Bose's patent rights.  Upon information and belief, despite Beats' knowledge of the '537 patent and its knowledge of its infringing acts, Beats has taken no steps to discontinue sales or importation of the Accused Products or remove the Accused Products from the market.

### Count II – Infringement of U.S. Patent No. 8,073,150

43.     Bose re-alleges and incorporates herein by reference the allegations in paragraphs 1-42 of this Complaint.

44.     In violation of 35 U.S.C. § 271, Beats has directly infringed and continues to directly infringe one or more claims of the '150 patent by making, using, offering for sale, and/or selling the Accused Products in the United States and/or importing the Accused Products into the United States.

45.     Beats has had actual notice of the '150 patent since at least when Bose notified Beats of the '150 patent.  Further, Beats has actual notice of the '150 patent and its infringing acts at least as a result of Bose's filing of a complaint in the ITC and filing of this Complaint.

46.     In violation of 35 U.S.C. § 271, Beats has induced infringement of the '150 patent in this district and elsewhere in the United States by instructing users to use the Accused Products in a manner that infringes one or more claims of the '150 patent.  For example, the Beats Studio® User Guide and Beats Studio® Wireless User Guide demonstrate operation of the Beats Studio® headphones, which infringe the '150 patent when operated as instructed.

47.     The Accused Products are designed to use the infringing noise cancelling functionality when operated by an end user.  Beats has designed the infringing noise cancelling functionality to be used automatically when a user is listening to music, and Beats instructs users on how to implement noise cancelling functionality when a user only desires noise reduction.  When used to listen to music, the Beats Studio® and Studio® Wireless use the products' noise cancellation to "*automatically* strike[] the perfect blend between your music and the world outside."   Exhibits 7-8 (emphasis added).  The Accused Products can also be used for noise cancellation when no music is played, a feature that Beats also advertises.  *See id.*  Thus, Beats specifically encourages users to use the infringing functionality.  Beats advertises no method to turn off features that cause end users to directly infringe.

48.     In violation of 35 U.S.C. § 271, Beats has contributorily infringed the '150 patent in this district and elsewhere in the United States by making, using, selling, distributing, and/or offering for sale the Accused Products in the United States, and/or importing the Accused Products into the United States, for use in practicing the inventions set forth in the '150 patent that Beats knows to be specially made or adapted for use in infringing the invention(s) claimed by the '150 patent.  The Accused Products have no substantial non-infringing use.

49.     Upon information and belief, Beats knows or is willfully blind to the fact that the Accused Products are especially made or especially adapted for a use that infringes, and the Accused Products are not a staple article or commodity of commerce suitable for a substantial non-infringing use.

50.     Upon information and belief, Beats will continue to infringe the '150 patent unless enjoined by this Court.

51.     Beats does not have a license or permission to use the '150 patented technology.

52.     As a result of Beats' infringement of the '150 patent, Bose is being irreparably injured, and Bose will suffer additional irreparable injury unless and until Beats is enjoined by this Court.

53.     As a result of Beats' infringement of the '150 patent, Bose has suffered and will continue to suffer damages, in an amount yet to be determined, including due to loss of sales, profits, and potential sales that Bose would have made but for Beats' infringing acts.

54.     Upon information and belief, Beats' infringement of the '150 patent is and has been willful.  Upon information and belief, despite knowledge of the '150 patent, an objectively high likelihood that its actions constituted infringement of the '150 patent, and that Beats knew or should have known of that objective likelihood, Beats has infringed and continues to infringe the

'150 patent with reckless disregard for Bose's patent rights.  Upon information and belief, despite

Beats' knowledge of the '150 patent and its knowledge of its infringing acts, Beats has taken no

steps to discontinue sales or importation of the Accused Products or remove the Accused Products

from the market.

### Count III – Infringement of U.S. Patent No. 8,073,151

55.      Bose re-alleges and incorporates herein by reference the allegations in paragraphs

1-54 of this Complaint.

56.      In violation of 35 U.S.C. § 271, Beats has directly infringed and continues to

directly infringe one or more claims of the '151 patent by making, using, offering for sale, and/or

selling the Accused Products in the United States and/or importing the Accused Products into the

United States.

57.      Beats has had actual notice of the '151 patent since at least when Bose notified

Beats of the '151 patent.  Further, Beats has actual notice of the '151 patent and its infringing acts

at least as a result of Bose's filing of a complaint in the ITC and filing of this Complaint.

58.      In violation of 35 U.S.C. § 271, Beats has induced infringement of the '151 patent

in this district and elsewhere in the United States by instructing users to use the Accused Products

in a manner that infringes one or more claims of the '151 patent.  For example, the Beats Studio®

User Guide and Beats Studio® Wireless User Guide demonstrate operation of the Beats Studio®

headphones, which infringe the '151 patent when operated as instructed.

59.      The Accused Products are designed to use the infringing noise cancelling

functionality when operated by an end user.  Beats has designed the infringing noise cancelling

functionality to be used automatically when a user is listening to music, and Beats instructs users

on how to implement noise cancelling functionality when a user only desires noise reduction.

When used to listen to music, the Beats Studio® and Studio® Wireless use the products' noise

cancellation to "*automatically* strike[] the perfect blend between your music and the world outside."  Exhibits 7-8 (emphasis added).  The Accused Products can also be used for noise cancellation when no music is played, a feature that Beats also advertises.  *See id.*  Thus, Beats specifically encourages users to use the infringing functionality.  Beats advertises no method to turn off features that cause end users to directly infringe.

60.     In violation of 35 U.S.C. § 271, Beats has contributorily infringed the '151 patent in this district and elsewhere in the United States by making, using, selling, distributing, and/or offering for sale the Accused Products in the United States, and/or importing the Accused Products into the United States, for use in practicing the inventions set forth in the '151 patent that Beats knows to be specially made or adapted for use in infringing the invention(s) claimed by the '151 patent.  The Accused Products have no substantial non-infringing use.

61.     Upon information and belief, Beats knows or is willfully blind to the fact that the Accused Products are especially made or especially adapted for a use that infringes, and the Accused Products are not a staple article or commodity of commerce suitable for a substantial non-infringing use.

62.     Upon information and belief, Beats will continue to infringe the '151 patent unless enjoined by this Court.

63.     Beats does not have a license or permission to use the '151 patented technology.

64.     As a result of Beats' infringement of the '151 patent, Bose is being irreparably injured, and Bose will suffer additional irreparable injury unless and until Beats is enjoined by this Court.

65.     As a result of Beats' infringement of the '151 patent, Bose has suffered and will continue to suffer damages, in an amount yet to be determined, including due to loss of sales, profits, and potential sales that Bose would have made but for Beats' infringing acts.

66.     Upon information and belief, Beats' infringement of the '151 patent is and has been willful.  Upon information and belief, despite knowledge of the '151 patent, an objectively high likelihood that its actions constituted infringement of the '151 patent, and that Beats knew or should have known of that objective likelihood, Beats has infringed and continues to infringe the '151 patent with reckless disregard for Bose's patent rights.  Upon information and belief, despite Beats' knowledge of the '151 patent and its knowledge of its infringing acts, Beats has taken no steps to discontinue sales or importation of the Accused Products or remove the Accused Products from the market.

### Count IV – Infringement of U.S. Patent No. 8,054,992

67.     Bose re-alleges and incorporates herein by reference the allegations in paragraphs 1-66 of this Complaint.

68.     In violation of 35 U.S.C. § 271, Beats has directly infringed and continues to directly infringe one or more claims of the '992 patent by making, using, offering for sale, and/or selling the Accused Products in the United States and/or importing the Accused Products into the United States.  The method claims of the '992 patent are directly infringed at least by operation of the Accused Products, and may also be infringed through manufacture and/or testing.

69.     Beats has had actual notice of the '992 patent since at least when Bose notified Beats of the '992 patent.  Further, Beats has actual notice of the '992 patent and its infringing acts at least as a result of Bose's filing of a complaint in the ITC and filing of this Complaint.

70.     In violation of 35 U.S.C. § 271, Beats has induced infringement of the '992 patent in this district and elsewhere in the United States by instructing users to use the Accused Products

in a manner that infringes one or more claims of the '992 patent.  For example, the Beats Studio®

User Guide and Beats Studio® Wireless User Guide demonstrate operation of the Beats Studio®

headphones, which infringe the '992 patent when operated as instructed.

71.     The Accused Products are designed to use the infringing noise cancelling

functionality when operated by an end user.  Beats has designed the infringing noise cancelling

functionality to be used automatically when a user is listening to music, and Beats instructs users

on how to implement noise cancelling functionality when a user only desires noise reduction.

When used to listen to music, the Beats Studio® and Studio® Wireless use the products'

noise cancellation to "*automatically* strike[] the perfect blend between your music and the world

outside."   Exhibits 7-8 (emphasis added).  The Accused Products can also be used for noise

cancellation when no music is played, a feature that Beats also advertises.  *See id.*  Thus, Beats

specifically encourages users to use the infringing functionality.  Beats advertises no method to

turn off features that cause end users to directly infringe.

72.     In violation of 35 U.S.C. § 271, Beats has contributorily infringed the '992 patent in

this district and elsewhere in the United States by making, using, selling, distributing, and/or

offering for sale the Accused Products in the United States, and/or importing the Accused Products

into the United States, for use in practicing the inventions set forth in the '992 patent that Beats

knows to be specially made or adapted for use in infringing the invention(s) claimed by the '992

patent.  The Accused Products have no substantial non-infringing use.

73.     Upon information and belief, Beats knows or is willfully blind to the fact that the

Accused Products are especially made or especially adapted for a use that infringes, and the

Accused Products are not a staple article or commodity of commerce suitable for a substantial non-

infringing use.

74.     Upon information and belief, Beats will continue to infringe the '992 patent unless enjoined by this Court.

75.     Beats does not have a license or permission to use the '992 patented technology.

76.     As a result of Beats' infringement of the '992 patent, Bose is being irreparably injured, and Bose will suffer additional irreparable injury unless and until Beats is enjoined by this Court.

77.     As a result of Beats' infringement of the '992 patent, Bose has suffered and will continue to suffer damages, in an amount yet to be determined, including due to loss of sales, profits, and potential sales that Bose would have made but for Beats' infringing acts.

78.     Upon information and belief, Beats' infringement of the '992 patent is and has been willful.  Upon information and belief, despite knowledge of the '992 patent, an objectively high likelihood that its actions constituted infringement of the '992 patent, and that Beats knew or should have known of that objective likelihood, Beats has infringed and continues to infringe the '992 patent with reckless disregard for Bose's patent rights.  Upon information and belief, despite Beats' knowledge of the '992 patent and its knowledge of its infringing acts, Beats has taken no steps to discontinue sales or importation of the Accused Products or remove the Accused Products from the market.

### Count V – Infringement of U.S. Patent No. 8,345,888

79.     Bose re-alleges and incorporates herein by reference the allegations in paragraphs 1-78 of this Complaint.

80.     In violation of 35 U.S.C. § 271, Beats has directly infringed and continues to directly infringe one or more claims of the '888 patent by making, using, offering for sale, and/or selling the Accused Products in the United States and/or importing the Accused Products into the

United States.  The method claims of the '888 patent are directly infringed at least by operation of the Accused Products, and may also be infringed through manufacture and/or testing.

81.     Beats has had actual notice of the '888 patent since at least when Bose notified Beats of the '888 patent.  Further, Beats has actual notice of the '888 patent and its infringing acts at least as a result of Bose's filing of a complaint in the ITC and filing of this Complaint.

82.     In violation of 35 U.S.C. § 271, Beats has induced infringement of the '888 patent in this district and elsewhere in the United States by instructing users to use the Accused Products in a manner that infringes one or more claims of the '888 patent.  For example, the Beats Studio® User Guide and Beats Studio® Wireless User Guide demonstrate operation of the Beats Studio® headphones, which infringe the '992 patent when operated as instructed.

83.     The Accused Products are designed to use the infringing noise cancelling functionality when operated by an end user.  Beats has designed the infringing noise cancelling functionality to be used automatically when a user is listening to music, and Beats instructs users on how to implement noise cancelling functionality when a user only desires noise reduction. When used to listen to music, the Beats Studio® and Studio® Wireless use the products' noise cancellation to "*automatically* strike[] the perfect blend between your music and the world outside."   Exhibits 7-8 (emphasis added).  The Accused Products can also be used for noise cancellation when no music is played, a feature that Beats also advertises.  *See id.*  Thus, Beats specifically encourages users to use the infringing functionality.  Beats advertises no method to turn off features that cause end users to directly infringe.

84.     In violation of 35 U.S.C. § 271, Beats has contributorily infringed the '888 patent in this district and elsewhere in the United States by making, using, selling, distributing, and/or offering for sale the Accused Products in the United States, and/or importing the Accused Products

into the United States, for use in practicing the inventions set forth in the '888 patent that Beats

knows to be specially made or adapted for use in infringing the invention(s) claimed by the '888

patent.  The Accused Products have no substantial non-infringing use.

85.     Upon information and belief, Beats knows or is willfully blind to the fact that the

Accused Products are especially made or especially adapted for a use that infringes, and the

Accused Products are not a staple article or commodity of commerce suitable for a substantial non-

infringing use.

86.     Upon information and belief, Beats will continue to infringe the '888 patent unless

enjoined by this Court.

87.     Beats does not have a license or permission to use the '888 patented technology.

88.     As a result of Beats' infringement of the '888 patent, Bose is being irreparably

injured, and Bose will suffer additional irreparable injury unless and until Beats is enjoined by this

Court.

89.     As a result of Beats' infringement of the '888 patent, Bose has suffered and will

continue to suffer damages, in an amount yet to be determined, including due to loss of sales,

profits, and potential sales that Bose would have made but for Beats' infringing acts.

90.     Upon information and belief, Beats' infringement of the '888 patent is and has been

willful.  Upon information and belief, despite knowledge of the '888 patent, an objectively high

likelihood that its actions constituted infringement of the '888 patent, and that Beats knew or

should have known of that objective likelihood, Beats has infringed and continues to infringe the

'888 patent with reckless disregard for Bose's patent rights.  Upon information and belief, despite

Beats' knowledge of the '888 patent and its knowledge of its infringing acts, Beats has taken no

steps to discontinue sales or importation of the Accused Products or remove the Accused Products from the market.

## PRAYER FOR RELIEF

WHEREFORE, Bose respectfully requests that this Court enter judgment in its favor and against Beats and grant the following relief:

A.      A declaration that Beats has infringed the '537, '150, '151, '992, and '888 patents under 35 U.S.C. § 271, and final judgment incorporating the same;

B.      Equitable relief under 35 U.S.C. § 283, including but not limited to an injunction that enjoins Beats and Beats' officers, agents, servants, employees, representatives, successors, and assigns, and all others acting in concert or participation with them, from continued infringement of the '537, '150, '151, '992, and '888 patents;

C.      An accounting of all infringing sales and other infringing acts by Beats;

D.      An award of damages sufficient to compensate Bose for Beats' infringement of the '537, '150, '151, '992, and '888 patents, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

E.      An order compelling an accounting for infringing acts not presented at trial and an award by the Court of additional damages for such acts;

F.      An order finding that Beats' infringement is willful and an order increasing damages under 35 U.S.C. § 284;

G.      An order finding that this is an exceptional case under 35 U.S.C. § 285 and awarding relief, including reasonable attorneys' fees, costs, and expenses; and

H.      Any other relief to which Bose is entitled or the Court deems just and proper.

## JURY TRIAL DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Bose demands a trial by jury of all issues triable to a jury.

Respectfully submitted,

_/s/ David M. Fry_____
John W. Shaw (No. 3362)
David M. Fry (No. 5486)
SHAW KELLER LLP

OF COUNSEL:
Charles H. Sanders                     300 Delaware Avenue, Suite 1120
M. Frank Bednarz                       Wilmington, DE 19801
GOODWIN PROCTER LLP                    (302) 298-0700
Exchange Place                         jshaw@shawkeller.com
Boston, Massachusetts 02109            dfry@shawkeller.com
(617) 570-1000                         _Attorneys for Bose Corporation_

Dated: July 25, 2014